IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**REV. JOHN S. VAUGHN**                                                                                    **PLAINTIFF**

v.                                                                                    CIVIL NO. 1:25-cv-347-TBM-RPM

**HARRISON COUNTY, MISSISSIPPI,** *et al.*                                            **DEFENDANTS**

## ORDER

Yesterday, Rev. John Vaughn filed this lawsuit seeking to have fifty people attend a worship service in a barn on his private property. Vaughn is proceeding *pro se*. He has scheduled the worship service for some time tomorrow, but he acknowledges that Harrison County has told him he cannot have the fifty people in the barn because Harrison County believes that a gathering at the property "would constitute a very serious life safety situation."

Vaughn has filed a Motion for a Temporary Restraining Order asking this Court to order Harrison County to allow the fifty people into the barn. But he does not want Harrison County to have notice of this motion or to have the opportunity to respond. Instead, he wants this Court to enter an *ex parte* Order without giving Harrison County the chance to explain their position. But this is a litigation strategy created by Vaughn's own making. Instead, Harrison County needs to be served with process, given time to respond, and then an evidentiary hearing can be set.

Vaughn's motion is denied for a number of reasons. First, the primary purpose of a temporary restraining order is to maintain the status quo. But Vaughn is seeking to change it—not maintain it. Harrison County told him about seven months ago to not have fifty people in this barn. Vaughn could have challenged that action then. Second, Vaughn does not establish a substantial likelihood of success on the merits. Vaughn does not really present evidence or on-point case law

to support his assertions. Third, Vaughn does not show a substantial threat of irreparable injury. Vaughn recognizes that the congregation's primary church building is available for the worship service. Fourth, the harm that will result if the temporary restraining order is granted potentially outweighs Vaughn's injury. If the Court were to grant the temporary restraining order, these people could be injured while congregating at Vaughn's barn. And fifth, granting the temporary restraining order could disserve the public interest because it may expose fifty people to potentially dangerous and unsafe conditions.

It is true that some of his allegations—even if conclusory—are concerning. But even still, Harrison County has stated that it believes allowing fifty people inside of this barn will present a "very serious life safety situation." Vaughn has really only presented conclusory statements in response. And he provides no concrete evidence in support. No sworn affidavit. No photographs. A court turns activist if it were to force a county to allow a gathering that the county believes is dangerous—without allowing the county the opportunity to first respond and explain. Accordingly, the Court denies the Motion for a Temporary Restraining Order [2] and takes the Motion for a Preliminary Injunction [3] under advisement.

## I. BACKGROUND AND PROCEDURAL HISTORY

Rev. John Vaughn[1] owns private property "located at 17417 Carlton Cuevas Road, Gulfport, Mississippi." [2], p. 1. But on April 30, 2025, Harrison County issued a cease-and-desist order "regarding remodeling work on Plaintiff's barn."[2] *Id.* at 2. The order was allegedly related to zoning and construction requirements. [1], p. 6. But the directive at issue, which Vaughn refers to as "Item

---

[1] Vaughn does not inform the Court of what church he is a member or pastor.
[2] Vaughn does not provide the Court with any information, through photo evidence or otherwise, of the state of his barn and the remodeling work which led to the cease-and-desist order.

2

"#8," requires Vaughn to "[c]ease operating a church and accessory structures or apply for conditional use to do so." [2-1].[3] Vaughn assures the Court of his "complete cooperation" with "Item #8's prohibition." [1], p. 6. Vaughn says that, since April 30, 2025, he has refrained from hosting Bible studies or worship services, conducting monthly prayer meetings, and "exercis[ing] religious practice on his own land." [2], p. 3. And he claims that he did not "violate, or resist any legitimate zoning requirement related to construction or building safety," despite his argument that "Item #8 is not about construction[,] . . . fire safety[,] . . . [or] building permits." [1], pps. 4, 6.

But this changed on November 15, 2025 when he "announced during a worship service at his church that he intended to hold a Thanksgiving prayer gathering and fellowship meal on Saturday, November 22, 2025, at the property." [2], p. 3. Fifty people are expected to attend. *Id.* at 4. Vaughn claims that "[s]omeone recorded [his] announcement and provided it to Harrison County officials." *Id.* Two days later, on November 17, 2025, Virgil Gillespie emailed William Symmes, Vaughn's land-use attorney.[4] According to Vaughn, the email states:

> I have been furnished a video of an invitation by Pastor Vaughn to a gathering on [17417 Carlton Cuevas Road]. This gathering would be a violation of the existing cease and desist order, and he has an application for a conditional use for an assembly hall coming up before the December meeting of the Harrison County Planning Commission. It has been my experience that the Commissioners do not look kindly on someone who uses the property for an applied use before they have been given the proper permits/permission to do so. Also, if he has this gathering, it would constitute a very serious life safety situation.[5]

---

[3] Vaughn does not provide any information or context as to why the cease-and-desist order was issued, nor does he provide the entirety of the order. The only portion of the cease-and-desist order that Vaughn submitted to the Court was a seemingly partial list of required actions. [2-1].

[4] Vaughn proceeds *pro se* in this action, despite retaining Symmes as his "land use attorney" for purpose of compliance with the cease-and-desist order. [2], p. 3.

[5] The email is attached as Exhibit C to the Motion for a Temporary Restraining Order [2]. [2-2]. But the Exhibit as attached is cut-off and does not provide the full text of the email. Specifically, the Exhibit as attached does not show the language "[i]t has been my experience that the Commissioners do not look kindly on someone who uses the property for an applied use before they have been given the proper permits/permission to do so" and "if he has this gathering, it would constitute a very serious life safety situation." [2-2]. But Vaughn provides a written representation of this email throughout the Complaint [1] and Motion for a Temporary Restraining Order [2].

[1], p. 9; [2-2].

Gillespie also copied Terry Moran, who applied for the conditional use for an assembly hall "on [Vaughn's] behalf." [1], p. 9.

Vaughn interpreted this communication as "a threatening email" that requires him to obtain "the proper permits/permission . . . before holding worship" and "demonstrates that Defendants actively monitor [Vaughn's] religious activities and communications." [1], paras. 88, 89, 91. Accordingly, he filed his Complaint and subsequent Motions for an *ex parte* Temporary Restraining Order [2] and Preliminary Injunction [3] just before noon on November 20, 2025.

In these filings, he alleges violations of the First Amendment, RLUIPA, and the Mississippi Religious Freedom Restoration Act. Specifically, he claims that the cease-and-desist order "violates the First Amendment's Free Exercise, Assembly, and Speech Clauses; the Religious Land Use and Institutionalized Persons Act (RLUIPA); and constitutional prohibitions on prior restraint, viewpoint discrimination, retaliation, and unconstitutional conditions." *Id.* at 2.

## II. DISCUSSION

A temporary restraining order is a mechanism for affording relief for a limited time, when immediate and irreparable injury, loss, or damage will result to the movant before a party can be heard in opposition. *See Esparza v. Bd. of Trustees*, 182 F.3d 915, 1999 WL 423109, at *2 (5th Cir. 1999) (citing FED. R. CIV. P. 65(b)). "Similarly, *the purpose of a temporary restraining order is to preserve the status quo* and prevent irreparable harm, but only until the court can hold an adversarial hearing for a preliminary injunction." *Sanders v. Fitch*, No. 1:23-cv-105-BPM-RP, 2023 WL 7782922, at *1 (N.D. Miss. Nov. 15, 2023) (emphasis added) (citing FED. R. CIV. P. 65(b)(3); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda*

*Cnty.*, 415 U.S. 423, 438-39, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)). And while a temporary restraining order may be granted *ex parte*, these are disfavored and seldomly granted. *Id.* (citing Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 65, Prac. Commentary); *Evans v. Hall*, No. 4:20-cv-140-NBB-JVM, 2020 WL 5899422, at *1 (N.D. Miss. Oct. 5, 2020).

As the movant, Vaughn must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (quotation omitted); *see Hassani v. Napolitano*, No. Civ. A. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (finding that "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," and the movant must establish the same four elements for obtaining a preliminary injunction). "When a party moves for a temporary restraining order or preliminary injunction, the burden of proof is a heavy one." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 788 (S.D. Miss. 2011); *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 303 (5th Cir. 1982) ("The plaintiff bears the burden of persuasion on all four elements."). The first element "is a threshold inquiry and is the most important [element]." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). "Thus, a court need not consider the other [elements] if the movant fails to show a likelihood of success on the merits." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (cleaned up)).

Also, while this opinion primarily addresses the request for a temporary restraining order, it is important to note that there are three types of "specifically disfavored" preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that he could recover at the conclusion of a full trial on the merits. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Id.* (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)). A preliminary injunction that alters the status quo takes the form of a mandatory preliminary injunction. *See Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024). And such mandatory injunctions are "warranted only in the most extraordinary circumstances." *Id.*; *see also Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2d Cir. 1994) ("When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships . . . the district court's decision *must be correct* (insofar as possible in what may be an incomplete record.")) (emphasis added).

### i. Status quo

Rather than maintain the status quo, Vaughn's Motion for Temporary Restraining Order seeks to establish it. Generally, the status quo is defined as the "last peaceable uncontested status" existing between the parties before the dispute developed. *Pendergest-Holt v. Certain Under Writer's at Lloyd's of London*, 681 F. Supp. 2d 816, 836 n.4 (S.D. Tex. 2010) (citing 11A WRIGHT, MILLER & KANE, Federal Practice and Procedure § 2948 (2d ed. 1995)). By preserving the status quo, the

court can hold a trial, make findings of fact, render conclusions of law, and issue a remedy. *See In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1228 (Del. Ch. 2022). This preservation is "designed to protect the court's ability to see the case through." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024).

Vaughn claims that he completely complied with Harrison County's cease-and-desist order. [1], para. 56. In doing so, Vaughn "has refrained from holding ANY religious gatherings on the Property." *Id.* at para. 45 (emphasis in original). So for the past six to seven months, the status quo has been this: fifty people are not allowed inside this particular structure on Vaughn's private property because Harrison County believes it is either too dangerous or it violates some other ordinances. Vaughn seeks to change that.

And even still, Vaughn readily recognizes that his church can worship at his current church building. So the congregation can meet *and* worship.[6] It just cannot meet at this very specific barn or on this particular piece of property, at least for now. The county's December Planning Commission hearing is just around the corner, at which Vaughn may very well be allowed to use the barn as he desires.

If Vaughn had filed this lawsuit and motion in April, then the status quo would be a much closer call. But waiting many months to complain and now object shortly before a hearing in front of the county makes this an easy decision on status quo. Not to mention that Vaughn's delay is so lengthy that it brings laches into play—at least for purposes of an *ex parte* temporary restraining order.

---

[6] This scenario is very different from the COVID-19 church shutdowns where local governments were not allowing congregations to meet in-person or worship together *at all*. *See, e.g., Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926 (D.N.M. 2020), *aff'd sub. nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021).

7

**ii. Substantial likelihood of success on the merits**

Vaughn claims violations of RLUIPA, Mississippi Religious Freedom Restoration Act, and several First Amendment theories. But he provides only conclusory statements that he "has an extraordinarily strong likelihood of success" on his claims. [2], p. 6. Vaughn provides no real evidence or specific case law to support his claims. Rather, he provides only general case law and legal theories. *See* [2], pps. 6-8. But even if he provided more evidence to support his claims, a person does not have a constitutional or statutory right to host fifty people in a structure that "constitute[s] a very serious life safety situation," even if the reason for hosting is for a worship service. [2], p. 3. On the other hand, a local government cannot claim a structure "constitute[s] a very serious life safety situation"—when it does not—just to prevent people from worshiping. And obviously the First Amendment and RLUIPA trump any local ordinance, so Harrison County must be mindful that their actions do not violate federal law. But this is why Harrison County needs to respond. An evidentiary hearing is required to resolve this dispute.

And the "static deficiency in the quantum of evidence" is far from the only problem with Vaughn's request. Samuel L. Bray, *The Purpose of a Preliminary Injunction*, 78 Vand. L. Rev. 809, 822 (2025). The Court is also faced with the issue of time, for "the district judge cannot be said to have the advantage of living with the case and getting to know its factual nuances." *Id*. (quotations omitted). So the Court is being asked to appraise the merits when the information needed to do that is unavailable. *Id*. at n.87 (citing John Leubsdorf, *Preliminary Injunctions: In Defense of the Merits*, 76 Fordham L. Rev. 33, 41 (2007). And the "problem for the judge asked to grant a preliminary injunction[7] is that he is being asked to rule in a hurry, on the basis of incomplete

---

[7] The standard for a temporary restraining order is "substantially identical" to the standard for a preliminary injunction. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).

information. The risk of error is high." *Id.* (quoting Richard A. Posner, *Economic Analysis of Law* § 21.4, at 522 (3d ed. 1986)). Since this motion was filed, the Court has handled four sentencings and two guilty pleas. This is in addition to the time spent out of the courtroom itself that still requires special attention given to other cases in the management of the hundreds of cases on the civil and criminal dockets.

The Fifth Circuit has held this first element to be *sine qua non*, meaning there is no need to proceed to the other elements if the plaintiff is unable to provide a substantial likelihood of success on the merits. *See Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001) (affirmed denial of preliminary injunction on the sole basis that there was no substantial basis that the plaintiff would prevail on the merits). But the Court will continue to address the other factors.

### iii. Irreparable injury

There is no substantial threat that Vaughn will suffer irreparable injury if the temporary restraining order is denied. Vaughn admits that he is a minister at a church, though Vaughn does not specify which church. In fact, he invited his congregation to attend the Thanksgiving gathering on his property "during a worship service *at his church*." [2], p. 3 (emphasis added). The congregation still has the opportunity to engage in Thanksgiving fellowship and worship. They are just unable to do so at Vaughn's barn on his private property. And Vaughn's December hearing before the Harrison County Planning Commission is fast-approaching.

But any harm that Vaughn has experienced can reasonably be attributed, at least partially, to him. Vaughn argues that he has been unable to host a myriad of worship events on his property for the last seven months. Vaughn claims these missed worship opportunities include twenty-eight weekly Bible studies, seven monthly prayer meetings, worship services, and the ability to gather

9

with his congregation for fellowship. *Id.* Accordingly, Vaughn had the ability to file his Complaint and any requests for injunctive relief well before November 20, 2025. To the extent that Vaughn claims "loss of this specific worship opportunity," that loss is partially attributable to him and his decision to file the Complaint and Motion for Temporary Restraining Order a mere two days before the Thanksgiving gathering. *Id.* at 2.

And if Vaughn hosted the Thanksgiving gathering at his barn and someone were injured or otherwise harmed by "a very serious life safety situation," then that would certainly amount to an irreparable injury. [2], p. 4. Vaughn does not provide any evidence, through photos or otherwise, of the state of his barn or property. The Court is unable to assess how unsafe the premises truly are and whether they indeed create "a very serious life safety situation." *Id.* Vaughn argues that the Defendants' claim that the Thanksgiving gathering is "a very serious life safety situation" is "conclusory, pretextual, and absurb." [1], p.11. But Vaughn's responses are also conclusory. Vaughn fails to provide supporting information as to the safety of his barn and private property. And a party moving for a temporary restraining order bears the burden of establishing the necessary factors. *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

### iv. Whether the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted

Here, the Court considers whether Vaughn's injury if the Court denies the temporary restraining order outweighs the harm that will result if the temporary restraining order is granted.

In denying the motion for a temporary restraining order, Vaughn would lose the ability to host the Thanksgiving gathering at his barn. But Vaughn can still host the event at another location, including his church. And Vaughn's injury does not outweigh the threat of harm that would result if a member of the congregation were injured on Vaughn's property. Vaughn presents no real

evidence to rebut Harrison County's statement that this gathering would present a "very serious life safety situation." [1], p. 11.

### v. Public interest

Finally, the Court considers the effect of the denial of the temporary restraining order on the public interest. There is certainly a public interest in protecting constitutionally and statutorily promised rights. Indeed, "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). But granting the temporary restraining order could disserve the public interest by exposing fifty people to the barn's unsafe conditions. Vaughn offers no real evidence concerning the safety of his barn and property. So he fails to show that the temporary restraining order will not have an adverse effect on the public interest. *See Hinton v. King*, Civil Action No. 1:13-cv-528-KS-MTP, 2014 WL 64050, at *1 (S.D. Miss. Jan. 8, 2014).

For the above reasons, Vaughn has not "clearly carried the burden of persuasion" on the requirements for a temporary restraining order. *Id.*

### III. CONCLUSION

Rev. Vaughn's request for an *ex parte* temporary restraining order is denied. The Court is prepared to set a hearing on the request for a preliminary injunction, but will first give the parties an opportunity to propose a schedule. Plaintiff shall provide the Defendants a copy of this Order.

IT IS THEREFORE ORDERED AND ADJUDGED that Rev. John Vaughn's Motion for an *ex parte* Temporary Restraining Order [2] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Rev. John Vaughn's Motion for a Preliminary Injunction [3] is taken under advisement.

THIS, the 21st day of November, 2025.

                                                  _____
                                                  TAYLOR B. McNEEL
                                                  UNITED STATES DISTRICT JUDGE

Case 1:25-cv-00347-TBM-RPM     Document 4     Filed 11/21/25     Page 12 of 12